JOURNAL ENTRY and OPINION
{¶ 1} After a bench trial, the trial court found appellant, Paul Banks ("appellant"), guilty of attempted aggravated murder, assault, and gross sexual imposition. Appellant was originally indicted for conspiracy to commit aggravated murder, attempted aggravated murder, felonious assault with sexual motivation and sexual predator specifications (later amended to attempted felonious assault), three counts of kidnapping with sexual motivation and sexual predator specifications, attempted rape with a sexual predator specification, and gross sexual imposition with a sexual predator specification for strangling and groping his girlfriend and later, while in jail, plotting with a cell mate to kill his girlfriend. The trial court found appellant guilty of attempted aggravated murder, assault, and gross sexual imposition, and not guilty of the remaining counts. Appellant was sentenced to prison for a total of ten and one-half years. Appellant appeals only his judgment of conviction of attempted aggravated murder.
 I. {¶ 2} For his first assignment of error, appellant contends that the evidence was insufficient to sustain his conviction of attempted aggravated murder. In particular, he argues that his actions were mere solicitations and did not constitute an attempt. However, appellant's argument is without merit.
 {¶ 3} Upon review for sufficiency of the evidence, this court must consider, in the light most favorable to the state, whether any rational trier of fact could conclude that the state proved the essential elements of the crime beyond a reasonable doubt. State v. Brinkley,105 Ohio St.3d 231, 2005-Ohio-1507, ¶ 40, 824 N.E.2d 959, citing Statev. Jenks (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus.
 {¶ 4} The crime of attempt, pursuant to R.C. 2923.02(A), provides as follows:
 {¶ 5} "No person, purposely or knowingly, and when purpose or knowledge is sufficient culpability for the commission of an offense, shall engage in conduct that, if successful, would constitute or result in the offense."
 {¶ 6} Likewise, the crime of aggravated murder, pursuant to R.C.2903.01(A), provides as follows:
 {¶ 7} "No person shall purposely, and with prior calculation and design, cause the death of another or the unlawful termination of another's pregnancy."
 {¶ 8} Here, there was more than sufficient evidence to prove the essential elements of attempted aggravated murder. First, the victim testified that she was contacted by telephone by George Martinez ("Martinez") who told her that her boyfriend, appellant, solicited him while in jail to kill her. Martinez informed the victim that he had a written note from appellant with a physical description of the victim and her address, with explicit directions to the victim's house. The victim testified that Martinez arrived at her house, handed the victim the note, and left. The victim then contacted the police.
 {¶ 9} Second, Martinez also testified that while in jail, appellant repeatedly asked him to "take care" of his girlfriend for him and suggested that he get her drunk and dump her body into the lake. Appellant offered to pay Martinez $10,000 to kill his girlfriend, claiming that a relative owed him $20,000 for a drug debt and that Martinez would receive one-half of that for killing his girlfriend. After appellant's continuous requests despite numerous rebuffs, Martinez finally told appellant he would do it, though in his mind, Martinez never intended to truly kill the victim. Once Martinez agreed to kill the victim, appellant wrote a note to Martinez describing the victim's height, weight, hair and eye color, and what she usually wore, as well as the victim's name, address, directions to her house, and where she parked her car. Upon Martinez's release from jail, he testified that he contacted the victim and gave her the note to warn her about appellant's intentions.
 {¶ 10} Third, Robert Carlisle ("Carlisle"), testified that he was also appellant's and Martinez's cell mate and overheard appellant soliciting Martinez to "take care" of his girlfriend. Carlisle testified that appellant told Martinez that if he took care of his girlfriend, he would take care of Martinez, and that he saw appellant write out the note with his girlfriend's description and directions to her house in the context of his solicitation. Although Carlisle told Martinez to flush the note down the toilet, Martinez did not.
 {¶ 11} Further, Detective Kirkwood also testified that appellant told him that he wrote the note because he thought the victim would have sex with Martinez and that he owed Martinez a drug debt and thought the victim would have sex with him to settle the debt.
 {¶ 12} Appellant would like this court to disregard his overt actions and not see them as "substantial steps" in actually committing aggravated murder because he did not know Martinez and had no way of contacting him outside of jail to pay him the alleged $10,000 for killing his girlfriend. In support of his position, appellant cites to State v.Valenta (June 28, 2001), Cuyahoga App. No. 78232, where this court held that mere solicitation without actually hiring or paying someone to kill appellant's girlfriend was insufficient to convict appellant of one of the two counts of aggravated murder. Although the Valenta court vacated part of appellant's conviction, this court affirmed the second count of aggravated murder and reasoned that appellant's acts of getting his girlfriend drunk, observing to see if she woke up when intoxicated, and putting boxes in her room to catch fire were "strongly corroborative of appellant's intent to murder" his girlfriend. Here, appellant's acts — offering Martinez $10,000 to "take care" of his girlfriend, providing him with her physical description, address, directions to her house, and where she parked her car, and repeatedly importuning him to commit the crime — went beyond the mere solicitation in Valenta as they strongly corroborate his criminal purpose to have his girlfriend killed. Any rational trier of fact could have concluded that appellant's actions constituted a "substantial step in a course of conduct planned to culminate in the aggravated murder of" the victim. See State v. Group,98 Ohio St.3d 248, 2002-Ohio-7247, ¶¶ 102-103, 781 N.E.2d 980. Thus, appellant's first assignment of error is overruled.
 II. {¶ 13} For his second assignment of error, appellant contends that his judgment of conviction of attempted aggravated murder is against the manifest weight of the evidence because appellant "barely knew" and "had no way of later contacting" Martinez. However, appellant's contention is without merit.
 {¶ 14} It cannot be said that the trial court clearly lost its way in finding appellant guilty of attempted aggravated murder so as to constitute a miscarriage of justice. Appellant constantly approached Martinez to kill his girlfriend for $10,000, despite refusals, until Martinez agreed to it. Appellant then provided Martinez with the specific means of locating his girlfriend for the purpose of killing her. Simply because appellant and Martinez did not have a long relationship and they had no way of contacting each other outside of jail does not make the rest of appellant's "substantial steps" towards attempted aggravated murder a nullity. Thus, appellant's second assignment of error is overruled and his conviction is affirmed.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal. It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Gallagher, P.J., concurs.
 McMonagle, J., dissents with separate opinion.
 DISSENTING OPINION {¶ 15} Respectfully, I dissent because I find State v. Valenta (June 28, 2001), Cuyahoga App. No. 78232, to be virtually indistinguishable and controlling.
 {¶ 16} In this case, Banks approached cellmate Martinez and solicited him to kill his girlfriend. He gave Martinez a description of his girlfriend, her address and directions to her house. He suggested that Martinez get the girlfriend drunk and drop her in the lake. And finally, he offered to pay Martinez $10,000 for this upon repayment from someone else of a drug debt.
 {¶ 17} In Valenta, the defendant asked a coworker about poisons that could be used to kill his girlfriend. He told others that he wanted to kill his girlfriend. He discussed with a coworker ways in which his girlfriend might be killed. He offered a coworker money and a reptile to kill his girlfriend. Valenta (in eerie similarity to Banks) further suggested that the coworker get his girlfriend drunk and then start a fire. He claimed to have put cardboard boxes in her room because they were very flammable. The police taped a phone conversation about these plans. Valenta admitted all these facts and further, admitted that he borrowed money to hire someone to kill his girlfriend, but never paid anyone.
 {¶ 18} This court found that such actions were insufficient for a finding of attempted aggravated murder:
 {¶ 19} "Mere solicitation, without the actual hiring of a hit man, does not constitute a substantial step in the commission of an attempted murder. See Annotation (1973), 54 A.L.R.3d 612, sections 7-8, 36-38. The acts of requesting someone to commit a murder and giving him a gun, setting up a meeting with a hit man, and paying the hit man $200 are mere preparations. State v. Dapice (1989), 57 Ohio App.3d 99. These are not sufficiently proximate to the crime intended and do not constitute attempted aggravated murder." Id.
 {¶ 20} Here, Banks solicited people to kill his girlfriend, but did not hire anyone. No payment was made. His "actions of soliciting a hit man were mere preparations, and did not constitute substantial steps toward an aggravated murder." Id.
 {¶ 21} In light of the clear precedent of Valenta, I would find the evidence in this case insufficient to sustain a conviction for attempted aggravated murder.