OPINION
{¶ 1} Defendant-appellant Jesse Pesta appeals from his convictions in the Clinton County Court of Common Pleas for three counts of attempted aggravated murder. For the reasons outlined below, we affirm appellant's convictions but reverse appellant's sentence and remand this case for resentencing.
 {¶ 2} In June 2005 the Clinton County Sheriff's Department received information from an unnamed individual that appellant wanted to hire someone to kill his ex-wife. The individual provided officers with appellant's cell phone number and a code-word of "horse *Page 2 Clinton CA2006-02-004 hockey," to use in contacting him. Acting on this information, Detective John Chapman of the Clinton County Sheriff's Department posed as a hit-man and initiated contact with appellant. Det. Chapman arranged to meet with appellant on June 28, 2005 in a room at the Wilmington Inn which had been wired for sound and video.
 {¶ 3} At this initial meeting, appellant told Chapman that he had a problem with his ex-wife, Kathryn Massie, and needed her "put out of commission, permanently." Appellant then went on to tell Chapman that he believed Massie may be pregnant. Specifically, appellant told Chapman "[i]t appears that she may be pregnant. * * * I needed to let you know that up front. I'm not sure. It looks that way. I just don't know. I didn't ask her. * * * Does that make any difference to you?" When Chapman indicated it was not a problem, appellant replied, "Okay. That's good. Now, what's the money part? What do you need?"
 {¶ 4} Appellant then negotiated a price with Chapman, wherein they discussed that making the death look like an accident would cost more money. Appellant indicated he "had a budget in mind," and told Chapman that he had $ 5,000 in cash. He then told Chapman that he had gathered information to "reduce the amount of work" that Chapman would have to do. Appellant provided Chapman with multiple pictures of Massie, as well as pictures of her vehicle and her fiancÉ's vehicle. He also provided Chapman with her work and personal schedules, as well as maps of the locations of her home, work, and the place where she brought her children for daycare. He went into detail about the locations of each place and the best routes for Chapman to take in getting from one place to another, using different maps for reference.
 {¶ 5} Appellant then indicated his preference that Chapman make it look like an accident and asked if he could afford that. They then agreed on a price of $ 5,000. Appellant told Chapman that he had the whole $ 5,000 available at his house and the two agreed that appellant would bring half of the money to their next meeting as a down payment, and would *Page 3 
pay the second half of the money when the job was done.
 {¶ 6} Before ending the meeting, Det. Chapman asked appellant, "You sure you want this done? * * * `Cause after it's done, it's done." To which appellant replied, "You're damn right I want it done."
 {¶ 7} Appellant next met with Det. Chapman on June 30, 2005 in the same Wilmington Inn hotel room. Appellant brought Chapman updated maps and more detailed information on Massie's schedules that he hoped would "be a little more helpful." He also gave Chapman additional details on Massie's apartment and how to locate her. The two agreed that the job would be completed within "about a month."
 {¶ 8} When Det. Chapman asked appellant for the money, appellant indicated he had one more request. Appellant stated, "I needs you to kill that two-year-old. Can you do that?" Appellant was referring to his daughter, A.M., who lived with Massie.
 {¶ 9} Chapman replied that killing a child would cost "a little bit more," and asked for another $ 5,000. Appellant replied that he wouldn't pay that much, gave Chapman the $ 2,500 they had previously agreed on, and stated he "may have to give you up." Chapman then asked, "What price were you wanting for the two-year old?" Appellant replied, "I was hoping six together." Chapman indicated he would do the whole job for $ 7,000. Appellant indicated that he did not have the additional $ 2,000 at the time but that he would come up with it. Chapman stated he would take the $ 2,500 as a down payment and appellant could come up with the extra $ 2,000 when he could. To which appellant replied, "All right. Well, that sounds great." Det. Chapman then again asked appellant, "Sure you want me to kill them?" Appellant replied, "I want them both dead."
 {¶ 10} Clinton County police officers, monitoring the exchange from the adjoining room, then entered the room and placed appellant under arrest. In a later search of appellant's home, officers recovered an additional $ 2,690 in cash. Appellant was indicted on July 14, *Page 4 Clinton CA2006-02-004 2005 on three counts of conspiracy to commit murder, three counts of attempted aggravated murder, and three counts of complicity. Prior to trial, the state dismissed the complicity charges and merged the three conspiracy charges into one count. Appellant waived his right to a jury trial and the case was tried before the court on December 8, 2005. At trial the state presented the testimony of Kathryn Massie and Det. Chapman, as well as the videos of Chapman's two meetings with appellant. At the conclusion of the state's evidence, the state moved to dismiss the conspiracy count, leaving only the three charges of attempted aggravated murder. Over appellant's objection, the trial court granted the motion. Appellant did not present any evidence.
 {¶ 11} The court found appellant guilty of each of the three counts of attempted aggravated murder. On January 19, 2006, appellant was sentenced to seven years imprisonment on each of the three attempted aggravated murder charges. The court ordered that the sentences run consecutively for an aggregate prison term of 21 years.
 {¶ 12} Appellant then filed this timely notice of appeal, raising seven assignments of error for our review. For purposes of discussion, we will address appellant's assignments of error out of order.
 {¶ 13} Assignment of Error No. 1:
 {¶ 14} "THE FINDINGS OF GUILTY [sic] ON THE THREE COUNTS OF ATTEMPTED MURDER WERE CONTRARY TO LAW."
 {¶ 15} Appellant argues that the facts of this case do not support a conviction for attempted murder, and may only support a conviction for the crime of conspiracy. Appellant contends that the overt act required for a criminal attempt is not completed where a defendant merely solicits another to commit a crime.
 {¶ 16} Essentially, appellant's challenge goes to the sufficiency of the evidence supporting the crime of which he was convicted. In reviewing a challenge to the legal *Page 5 Clinton CA2006-02-004 sufficiency of the evidence supporting a conviction, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. State v. Group, 98 Ohio St.3d 248, 2002-Ohio-7247.
 {¶ 17} Appellant was convicted of three counts of attempted aggravated murder, in violation of R.C. 2903.01(A) and R.C. 2923.02, for the attempted murder-for-hire of his ex-wife and his two-year-old daughter and for the attempted unlawful termination of his ex-wife's pregnancy.
 {¶ 18} The crime of aggravated murder, defined by R.C. 2903.01(A), provides that, "[n]o person shall purposely, with prior calculation and design, cause the death of another or the unlawful termination of another's pregnancy."
 {¶ 19} Pursuant to R.C. 2923.02, "no person, purposely or knowingly, and when purpose or knowledge is sufficient culpability for the commission of an offense, shall engage in conduct that, if successful, would constitute or result in the offense." The Ohio Supreme Court has explained that "[a] criminal attempt is when one purposely does or omits to do anything which is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime." Group at ¶ 95, citing State v. Woods (1976),48 Ohio St.2d 127. Further, a "substantial step" requires conduct that is "strongly corroborative of the actor's criminal purpose." Id. The court explained that "this standard does properly direct attention to overt acts of the defendant which convincingly demonstrate a firm purpose to commit a crime, while allowing police intervention * * * in order to prevent the crime when the criminal intent becomes apparent." Id., quotingWoods.
 {¶ 20} Appellant argues that there was no evidence of an overt act, beyond his act of conspiring with a person that he believed to be a hired hit-man, to establish the substantial step required for a conviction on attempted aggravated murder. However, the Ohio Supreme *Page 6 
expressly rejected this argument in State v. Group, and held that "a solicitation accompanied by the requisite intent may constitute an attempt." Id. at ¶ 100. In that case, the appellant Group had been arrested for the murder of a bar owner and was in jail awaiting trial. While in jail, Group enlisted the help of a fellow inmate, Adam Perry, offering him $ 150,000 to firebomb the house of the state's key witness when Perry bonded out of jail. Group gave Perry detailed instructions on how to make a firebomb and gave him the witness home address. Group further instructed Perry on how to mislead police by planting an ID bracelet at the scene so as to avoid suspicion. Perry abandoned the plan and informed law enforcement. After Group was convicted of the attempted aggravated murder of the witness, he appealed, arguing that there was insufficient evidence to convict him of attempt.
 {¶ 21} In affirming Group's conviction, the Ohio Supreme Court examined the distinctions between solicitation and attempt. The court recognized that, while some courts have concluded that mere solicitation may not constitute an attempt, "a rigid or formalistic approach to the attempt offense should be avoided." Id. at ¶ 100-101, citing and following State v. Urcinoli (1999), 321 N.J. Super. 519, 729 A.2d 507
(finding elements of attempt satisfied where defendant hired fellow inmate to kill someone outside the jail), Braham v. State (Alaska 1977),571 P.2d 631 (finding elements of attempt satisfied where defendant hired a man to kill a third person), U.S. v. Am. Airlines, Inc. (C.A.5, 1984), 743 F.2d 1114. The court explained that "[n]othing in the language of R.C. 2923.02(A), or in our own precedents, compels such [a rigid or formalistic] approach." Id. at ¶ 101. Citing Woods, the court explained that the crime of attempt is defined broadly as an act which constitutes a "substantial step," or conduct which "is strongly corroborative of the actor's criminal purpose." Id. Noting the reference to "overt acts * * * which convincingly demonstrate a firm purpose to commit a crime," the court held that "an `overt act' is simply an act that meets the `substantial step' criterion enunciated inWoods." Id. at ¶ 102. *Page 7 
 {¶ 22} The court held that Group's acts — offering Perry $ 150,000 to firebomb the witness's house, providing him with her address, repeatedly importuning him to commit the crime, instructing him on how to make the bomb and how to misdirect police investigations-strongly corroborated Group's criminal purpose and went beyond mere solicitation. The court held that Group's actions constituted a substantial step in a course of conduct planned to culminate in the aggravated murder of the witness and the evidence was therefore sufficient to support his conviction for attempted aggravated murder. Id. at ¶ 103, see, also, State v.Banks, Cuyahoga App. No. 85079, 2005-Ohio-3433 (finding sufficient evidence to support appellant's conviction for attempted aggravated murder where appellant offered fellow inmate $ 10,000 to murder appellant's girlfriend, providing him with a physical description of her and directions to her house).
 {¶ 23} Similarly, appellant's convictions for three counts of attempted aggravated murder in this case are supported by sufficient evidence and are not contrary to law. While appellant argues that his actions do not amount to more than a unilateral conspiracy, it is clear that, as in Group, his actions went far beyond mere solicitation and conspiracy. Appellant met with Det. Chapman on two occasions, negotiating contract prices for the murder of his pregnant ex-wife, and then his two-year-old daughter. He further requested that Chapman "make it look like an accident," in order to mislead law enforcement. Appellant gave Det. Chapman numerous pictures of his ex-wife, maps of various locations where she could be found, directions for the best routes to take to and from each location, and detailed information about her work and personal schedules. Appellant indicated that he was providing all of this information in order to cut down on the amount of work Chapman would have to do. As in Group, appellant in this case "took all action within his power" to assist Det. Chapman and ensure that the crime would be committed. We therefore find that the evidence presented was sufficient to prove the essential elements of attempted aggravated *Page 8 Clinton CA2006-02-004 murder and appellant's convictions are not contrary to law. Accordingly, appellant's first assignment of error is overruled.
 {¶ 24} Assignment of Error No. 3:
 {¶ 25} "THE CONVICTION FOR ATTEMPTED MURDER OF KATHRYN MASSIE'S UNBORN CHILD IN COUNT 5 WAS CONTRARY TO LAW."
 {¶ 26} In his third assignment of error, appellant argues that he may not be convicted for the attempted murder of Massie's unborn child because R.C. 2901.01 defines a "person" as an "individual" or an "unborn human who is viable." Appellant asserts that because the indictment and evidence failed to allege or establish that Massie's unborn child was viable, he may not be convicted of a second count attempted murder for attempting to cause the death of the fetus.
 {¶ 27} However, as described above, R.C. 2903.01 defines the crime of aggravated murder to include the purposeful, with prior calculation and design, unlawful termination of another's pregnancy. R.C. 2903.09(A) defines the "unlawful termination of another's pregnancy," as used in R.C. 2903.01, as "causing the death of an unborn member of the species homo sapiens, who is or was carried in the womb of another, as a result of injuries inflicted during the period that begins with fertilization and continues unless and until live birth occurs." Nowhere within this statute, is the viability of the unborn child an element of the offense. See, generally, State v. Coleman (1997), 124 Ohio App.3d 78 (upholding constitutionality of the statute). Appellant's conviction for attempted aggravated murder in count five goes to his purposeful attempt to cause the death of his ex-wife's unborn child and unlawfully terminate her pregnancy. Therefore, appellant's third assignment of error is without merit and is overruled.
 {¶ 28} Assignment of Error No. 2:
 {¶ 29} "THE FINDING OF GUILTY [sic] OF ATTEMPTED MURDER OF KATHRYN *Page 9 
MASSIE'S UNBORN CHILD IN COUNT 5 WAS BASED ON INSUFFICIENT EVIDENCE."
 {¶ 30} Assignment of Error No. 4:
 {¶ 31} "THE FINDING OF GUILTY (sic) OF ATTEMPTED MURDER OF [A.M.] AS ALLEGED IN COUNT 6 OF THE INDICTMENT WAS BASED ON INSUFFICIENT EVIDENCE."
 {¶ 32} Because appellant's second and fourth assignments of error are governed by the same legal principles, we will address them together.
 {¶ 33} In his second assignment of error, appellant contends that his conviction for the attempted murder of Massie's unborn child was not supported by sufficient evidence. Appellant asserts that he did not know for sure that Massie was pregnant and therefore lacked the specific intent to kill the unborn child. He further argues that there was no requirement, in his negotiations with Det. Chapman, that Massie be killed while pregnant.
 {¶ 34} In his fourth assignment of error, appellant argues that his conviction for the attempted murder of his two-year-old daughter, A.M., is not supported by legally sufficient evidence. Appellant asserts that, although he negotiated an additional fee for the murder of his daughter, he never exchanged the additional money with Det. Chapman and therefore did not commit any overt act which would constitute a substantial step toward the commission of the crime.
 {¶ 35} As noted above, in reviewing the sufficiency of the evidence underlying a criminal conviction, an appellate court examines the evidence in order to determine whether such evidence, if believed, would support a conviction. State v. Lucas, Tuscarawas App. No 2005AP090063,2006-Ohio-1675, ¶ 8; State v. Thompkins, 78 Ohio St.3d 380, 386,1997-Ohio-52. We find that the evidence presented with regard to appellant's convictions for the attempted unlawful termination of Massie's pregnancy and the attempted murder of his two-year-old daughter was sufficient to support his convictions. *Page 10 
 {¶ 36} Appellant contends that he suggested that Massie may be pregnant when he negotiated with Det. Chapman, but that he was uncertain. However, it is clear from a review of the record that, if Massie was pregnant, it was appellant's full intention that the unborn child was to die as well. Appellant asked Det. Chapman if it was a problem that his ex-wife may be pregnant and responded with relief when it was not. Additionally, Massie testified at appellant's trial that she was, in fact, more than six months pregnant at the time appellant negotiated to end both her and the unborn child's life. Massie testified that she was wearing maternity clothes and had gained roughly 30 pounds by that point in her pregnancy. As described above, appellant went to great lengths to assist Det. Chapman and expected and intended the murder to take place "within about a month," while Massie was still pregnant. We find there was sufficient evidence presented to conclude beyond a reasonable doubt that appellant purposefully attempted to unlawfully cause the death of Massie's unborn child. Appellant's argument on this issue is therefore without merit.
 {¶ 37} Appellant next asserts that, because he never actually gave Det. Chapman the additional money agreed upon in the negotiation to end the life of his two-year-old daughter, A.M., he committed no overt act constituting an attempt to murder A.M. However, it is again clear from our review of the record that appellant negotiated a "total contract price" of $ 7,000, to include the murders of both his pregnant ex-wife and two-year-old daughter. On this "contract," appellant was to pay $ 2,500 up front as a down payment, $ 2,500 when the job was done, and was to come up with the additional $ 2,000 as soon as he was able. He further provided Det. Chapman with details of Massie's schedule, including when and where Massie brought A.M. to daycare and maps of the locations. By these actions, appellant clearly engaged in conduct that is "strongly corroborative of his criminal purpose" and which "convincingly demonstrates a firm purpose to commit a crime." We therefore find that appellant's conviction for the attempted aggravated murder of A.M. is supported by sufficient *Page 11 
evidence.
 {¶ 38} Accordingly, appellant's second and fourth assignments of error are overruled.
 {¶ 39} Assignment of Error No. 5:
 {¶ 40} "THE APPLICATION OF FOSTER TO THIS CASE WOULD DENY APPELLANT THE RIGHT TO DUE PROCESS GUARANTEED BY THE FIFTH ANDFOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION."
 {¶ 41} Assignment of Error No. 6:
 {¶ 42} "THE APPLICATION OF FOSTER TO THIS CASE WOULD DENY APPELLANT THE EQUAL PROTECTION OF THE LAWS."
 {¶ 43} Assignment of Error No. 7:
 {¶ 44} "THE APPLICATION OF FOSTER TO THIS CASE WOULD VIOLATE THE EX POST FACTO CLAUSE."
 {¶ 45} Appellant's fifth, sixth, and seventh assignments of error all address the applicability of the Ohio Supreme Court's ruling inState v. Foster, 109 Ohio St.3d 1, 2006-Ohio-856 to appellant's sentence in this case and we will therefore address these assignments together. In these assignments, appellant argues that this court's application ofFoster would violate due process guarantees and the ex post facto clause and would deny him equal protection of the laws by subjecting him to resentencing, in which he may receive a sentence beyond the statutory minimum.
 {¶ 46} Initially we note that these arguments do not assign any error on the part of the trial court which we may address and are essentially not ripe for review. See State v. Reid, Cuyahoga App. No. 87290,2006-Ohio-3978. However, we have previously considered the ex post facto and due process arguments appellant raises herein and have rejected them. See State v. Doyle, Brown App. No. CA2005-11-020, 2006-Ohio-5373;State v. Sheets, Clermont *Page 12 Clinton CA2006-02-004 App. No. CA2006-04-032, 2007-Ohio-1799. Appellant asserts the additional argument that the application of Foster would deny him the equal protection of the laws. However, this argument essentially raises the same issues asserted under his due process and ex post facto arguments, claiming that he would be deprived, at resentencing, of the opportunity to take advantage of the presumptive minimum sentences that were available at his original sentencing hearing and which have since been severed from the Revised Code. We interpret this to be the same argument as raised in appellant's fifth and seventh assignments and we similarly reject it, noting that, as identified in our recent decision in Sheets, any presumptive minimum sentences were declared void ab initio pursuant to the court's ruling inFoster. ¶ 40 (Walsh, J., concurring).
 {¶ 47} For the reasons stated in the cases cited above, we continue to adhere to our position that Foster does not violate the ex post facto or due process clauses. Appellant's fifth, sixth, and seventh assignments of error are overruled.
 {¶ 48} However, as asserted by the state, appellant was sentenced on January 19, 2006, prior to the Ohio Supreme Court's decision inFoster, and his direct appeal was pending when the Foster decision was issued. Our review of the record reveals that the trial court relied on provisions of the Ohio statutory sentencing scheme which have since been deemed unconstitutional in sentencing appellant to consecutive and more than minimum sentences. The Foster court instructed that all cases pending on direct review in which unconstitutional sentencing provisions were utilized must be remanded for resentencing. Foster at ¶ 104. Consequently, we are required to remand this case for resentencing consistent with Foster. On remand, the trial court is not constitutionally required to impose a statutory minimum sentence and may impose a sentence within the basic ranges set forth in R.C. 2929.14(A).Foster at paragraph two of the syllabus. *Page 13 {¶ 49} Judgment reversed as to sentencing only and remanded for resentencing.
 BRESSLER, P.J. and WALSH, J., concur. *Page 1