OPINION
{¶ 1} Defendant-appellant, Chad P. Copeland, appeals his sentence from the Butler County Court of Common Pleas. We affirm the decision of the trial court.
 {¶ 2} Appellant was convicted of 21 criminal counts[1] for his involvement in a check-kiting *Page 2 
scheme and a theft from an investment scheme. Appellant was sentenced to 23 years in prison and ordered to pay $216,500 in fines and $868,381.68 in restitution. Appellant appealed his conviction and sentence to this court in State v. Copeland, Butler App. No. CA2003-12-320,2005-Ohio-5899 ("Copeland I"). In that case, this court affirmed appellant's convictions, but reversed and remanded the case to the trial court, ordering that a count of aggravated theft and a count of grand theft be merged because they were allied offenses of similar import. Thereafter, the Ohio Supreme Court accepted appellant's discretionary appeal and reversed the judgment of this court for resentencing based onState v. Foster, 109 Ohio St.3d 1, 2006-Ohio-856. See In re OhioCriminal Sentencing Statutes Cases, 110 Ohio St.3d 264, 2006-Ohio-4475. On remand, the trial court sentenced appellant once again to a total of 23 years in prison and ordered him to pay $216,500 in fines and $868,381.68 in restitution. Appellant timely appeals, raising two assignments of error.
 {¶ 3} Assignment of Error No. 1:
 {¶ 4} "THE TRIAL COURT ERRED IN DENYING THE APPELLANT THE RIGHT OF ALLOCUTION."
 {¶ 5} In his first assignment of error, appellant argues the trial court denied appellant his right to allocution by "interrupting" and "terminating" his allocution.
 {¶ 6} We first note that the failure of a trial court to ask a defendant whether he has anything to say before sentence is imposed is not a constitutional error. Hill v. United States (1962), 368 U.S. 424,428, 82 S.Ct. 468. Although not considered a constitutional right, the right of allocution is firmly rooted in the common-law tradition.Green v. United States (1961), 365 U.S. 301, 304, 81 S.Ct. 653.
 {¶ 7} Crim.R. 32(A) states, "At the time of imposing sentence, the court shall do all of the following: *Page 3 
 {¶ 8} "(1) Afford counsel an opportunity to speak on behalf of the defendant and address the defendant personally and ask if he or she wishes to make a statement in his or her own behalf or present any information in mitigation of punishment.
 {¶ 9} "(2) Afford the prosecuting attorney an opportunity to speak;
 {¶ 10} "(3) Afford the victim the rights provided by law;
 {¶ 11} "(4) In serious offenses, state its statutory findings and give reasons supporting those findings, if appropriate."
 {¶ 12} "The plain language of the rule imposes a mandatory duty upon the trial court to unambiguously address the defendant and provide him or her with the opportunity to speak before sentencing." State v.Green, 90 Ohio St.3d 352, 358, 2000-Ohio-182, citing Green v. UnitedStates (1961), 365 U.S. 301, 305, 81 S.Ct. 653, 655. "A Crim.R. 32 inquiry is much more than an empty ritual: it represents a defendant's last opportunity to plead his case or express remorse." Green at 359-360. If the trial court fails to offer a defendant the right to allocute, the remedy is a remand for resentencing. Hamilton v.Brown (1981), 1 Ohio App.3d 165, 168.
 {¶ 13} "Although the right of allocution is absolute, it is not unlimited." State v. Hofmann, Erie App. No. E-03-057, 2004-Ohio-6655, ¶ 32, citing State v. Smith (Nov. 8, 1995), Greene App. No. 94-CA-86,1995 WL 655943 at *2. Crim.R. 32(A)(1) prescribes that it be a statement or presentation in "mitigation of punishment." Id. at ¶ 33. "The purpose of allocution is to allow the defendant an additional opportunity to state any further information which the judge may take into consideration when determining the sentence to be imposed." Defiance v.Cannon (1990), 70 Ohio App.3d 821, 828.
 {¶ 14} At the resentencing hearing in this case, after affording appellant's trial counsel an opportunity to speak, the trial court gave appellant the opportunity to speak in mitigation. *Page 4 
Appellant began his allocution by stating that he has worked in the prison law library since his original conviction and conducted "a lot of research." Appellant then addressed the trial judge, inquiring "are you a man of your word." The trial judge responded, "I am willing to listen to your mitigation. I am not going to be cross-examined." Appellant continued to address the trial judge about this question, but the judge redirected appellant to confine his remarks to mitigation. The trial judge instructed appellant, "You can say whatever you want. I am not going to play whatever game that you attempted to orchestrate here * * * so if you want to offer some mitigation, Mr. Copeland, I suggest you proceed."
 {¶ 15} Thereafter, appellant ended his inquiry with the trial judge and continued with his allocution. Appellant discussed his view of this court's holding in Copeland /, and claimed that the cases against him were improperly joined for trial. Appellant argued that he was wrongly convicted of the check-kiting scheme. Appellant then discussed his interactions with the investors that led to his theft and securities-related convictions, arguing that he did nothing fraudulent. Thereafter, appellant stated that he had "67 people on my witness list that could have testified" and that he did not testify at trial. Appellant criticized the prosecutor and stated, "The main thing though, that I wanted to see happen today is I want the justice of this case to be based on the truth. And nothing that happened in this courtroom was based in truth." Appellant then began discussing the stock market and how the investments he made have gone up in value since his incarceration. Further, appellant began discussing his civil suit to recover his investment funds.[2]
 {¶ 16} At that point, the trial judge asked appellant if he would be "available" to pay restitution and appellant responded that he has always intended to repay a promissory note that he had given to the victims. Finally, the trial judge stated, "I understand the mitigation that *Page 5 
you are going to offer this Court is that you were — the Court lost its way and made an improper ruling that allowed the cases to be tried simultaneously. In other words, it didn't sever the cases. And that you were not guilty to these offenses and the jury lost its way by finding you guilty."
 {¶ 17} Appellant responded, "Yes."
 {¶ 18} Appellant argues that the trial court denied his right to allocution by interrupting and terminating the allocution. We disagree.
 {¶ 19} The case at bar is similar to the situation in State v.Hofmann, Erie App. No. E-03-057, 2004-Ohio-6655. In Hofmann, the Sixth District found "that Hofmann was permitted to give a lengthy statement that covered a number of topics, including his regret for the pain caused to his family, his medical problems and depression, his service in the community, and how the victim started asking him questions about sex. After Hofmann accused the Huron Police Department of not doing its job and being biased against him, the sentencing court did interrupt him and told Hofmann that his guilt was not at issue. When Hofmann again tried to talk about the police's manipulation of the victim, the court stated it had heard from Hofmann and was ready to impose the sentence. We conclude that the sentencing court did not err when it terminated Hofmann's allocution. Hofmann's accusations concerning the police were irrelevant to the appropriate sentence to be imposed. He had the opportunity to allocute." Hofmann at ¶ 34.
 {¶ 20} Like Hofmann, appellant was given his right to allocution. In mitigation, appellant claimed that the trial court erred by failing to sever the case, that he was not guilty of the charges, and provided his reasons in support. However, appellant's allocution turned to matters unrelated to mitigation. A trial court may limit a defendant's allocution if it concerns extraneous matters unrelated to the sentence and is not about mitigation. Hofmann at ¶ 33. As Judge Brogan stated inState v. Smith, "the right of allocution does not provide an accused *Page 6 
with the opportunity to vent his spleen with some superfluous diatribe."Smith, 1995 WL 655943 at *3.
 {¶ 21} Appellant's first assignment of error is overruled.
 {¶ 22} Assignment of Error No. 2:
 {¶ 23} "THE TRIAL COURT ERRED IN ITS SENTENCING OF THE APPELLANT TO MULTIPLE, CONSECUTIVE, AND MORE-THAN-MINIMUM SENTENCES."
 {¶ 24} In his second assignment of error, appellant argues the trial court erred by imposing multiple, consecutive, and more-than-minimum sentences. In support of his argument, appellant presents multiple issues for this court's consideration.
 {¶ 25} Appellant argues that, at the time the offenses were committed, appellant was entitled to minimum and concurrent sentences and the retroactive application of State v. Foster, 109 Ohio St.3d 1,2006-Ohio-856, is a violation of the prohibition against ex post facto laws. Appellant also argues that the 23-year sentence is unreasonable, arbitrary, and disproportionate for a "paper thief" to receive a longer sentence than an individual that commits a violent crime. Further, appellant argues that his sentence violates the rule of lenity.
 {¶ 26} This court has previously considered each of these arguments and found them to be without merit. See State v. Cockrell, Fayette App. No. CA2006-05-020, 2007-Ohio-1372; State v. Kincer, Clermont App. No. CA2006-08-055, 2007-Ohio-3352; State v. Pesta, Clinton App. No. CA2006-02-004, 2007-Ohio-2295; and State v. Sheets, Clermont App. No. CA2006-04-032, 2007-Ohio-1799.
 {¶ 27} Finally, appellant claims the imposition of a 23-year prison sentence, as well as fines of $216,500.00 and restitution of $868,381.68, is also unreasonable. However, appellant presents no reasoning or factual analysis to support his argument. See State v.Watson (1998), 126 Ohio App.3d 316. *Page 7 
 {¶ 28} Appellant's second assignment of error is overruled.
 {¶ 29} Judgment affirmed.
BRESSLER, P.J. and WALSH, J., concur.
[1] Appellant was convicted of two counts of aggravated theft by deception, one count of grand theft by deception, one count of money laundering, nine counts of misrepresentation in the sale of securities, and eight counts of passing bad checks. Copeland I at ¶ 11.
[2] Appellant's statement of allocution totaled twelve transcript pages. *Page 1