[Cite as *State v. Shaw*, 2024-Ohio-506.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

FAYETTE COUNTY


| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NO. CA2023-06-011 |
| | : | O P I N I O N |
| - vs - | | 2/12/2024 |
| | : | |
| TROY J. SHAW, | : | |
| Appellant. | : | |


CRIMINAL APPEAL FROM WASHINGTON COURT HOUSE MUNICIPAL COURT
Case No. CRB 2200541


The Mark Bamberger Co., LLC, and Mark J. Bamberger, for appellant.

Joshua W. Beasley, Fayette County Special Prosecutor, for appellee.



**HENDRICKSON, P.J.**

{¶ 1}   Appellant, Troy J. Shaw, appeals from his conviction and sentence in the Washington Court House Municipal Court for voyeurism.  For the reasons set forth below, we affirm his conviction and sentence.

{¶ 2}   On August 2, 2022, a complaint was issued charging appellant with one count of voyeurism in violation of R.C. 2907.08(B), a misdemeanor of the second degree. The charge arose out of allegations that on March 8, 2021, appellant secretly or

surreptitiously videotaped Erin Criswell, a home health-aid worker, in the bathroom of his home for the purpose of viewing Criswell's private areas.

{¶ 3} Appellant pled not guilty to the charge and a jury trial was held on May 26, 2023. At trial, the state presented testimony from Criswell, two Washington Court House police officers, and Jared Scott, a computer forensic specialist in the cyber crimes unit at the Ohio Bureau of Criminal Investigation (BCI). The state also introduced into evidence a Ring camera that had been discovered in appellant's bathroom, appellant's cellphone, and several videos recovered from appellant's phone.

{¶ 4} Criswell testified that on March 8, 2021, she was working at appellant's home in Washington Court House as a caregiver for appellant's wife, who required 24-hour care after suffering an anoxic brain injury. Criswell explained she worked as an STNA, a state-tested nurse aide, responsible for getting appellant's wife out of bed, brushing her teeth, and changing her in the mornings. In addition to working in appellant's home, Criswell also worked at a nursing home, at a tattoo shop, and did some tattoo modeling. Frequently, at the end of her shifts at appellant's home, before going to her next job, Criswell would change her clothing in the home's only bathroom.

{¶ 5} Criswell was aware that appellant had cameras in the living room and bedroom of his home that allowed him to observe and listen in on what was happening in the home. She was unaware, however, that he had placed a camera in the bathroom of his home. Throughout the morning of March 8, 2021, Criswell used the restroom multiple times before she discovered that appellant had concealed a Ring camera in the bathroom. Criswell found the camera hidden among toiletry items when looking for toothpaste. The camera had a washrag duct taped over top of it, with a hole cut in the washrag. It had been set up to record the toilet and sink areas.

{¶ 6} After discovering the camera, Criswell called her mother. Appellant, who

was not in the home at that time, overheard Criswell talking about the bathroom camera when listening in on another camera in his home. Appellant phoned Criswell and told her not to call the police. He claimed he had put the camera in the bathroom because he wanted to keep an eye on his grandchildren to make sure they were not getting into anything when they visited over the weekend. Criswell did not abide by appellant's wishes and called the police to report the discovery of the bathroom camera.

{¶ 7} Criswell testified that at no point in time had appellant expressed to her that he had put the camera in the bathroom out of concern that she, other caregivers, or family members in the home were not washing their hands. Criswell did not recall seeing any signs posted in the house about handwashing. Criswell testified about her own hygiene habits, explaining that after she used the restroom, she would use hand sanitizer rather than wash her hands at the bathroom sink. Criswell preferred to do this as appellant's bathroom had "scented hand wash," which she did not believe killed as many germs as hand sanitizer. As seen on one of the videos recovered from appellant's phone, on one occasion, after using the restroom, Criswell turned on the water in the bathroom sink but she did not wash her hands. She stated she did this because she did not recall that the hand soap was scented until after she turned on the faucet.

{¶ 8} Criswell testified that she did not consent to being filmed while she was in the bathroom or using the restroom. Criswell believed appellant was interested in seeing her in a state of undress. In addition to the camera being set up to record the toilet and sink area, Criswell noted that it was also pointed towards the only open area where she could change her clothing. In the past, appellant had expressed an interest in her personal life, telling her he had taken it upon himself to track down a website where a competition was being held for the selection of a cover model for the front page of a tattoo magazine. Appellant informed Criswell he found the website and voted for her.

{¶ 9} Officer Alex Rosato testified he was dispatched to appellant's home on March 8, 2021 on a report of possible voyeurism. He made contact with a "very panicked" Criswell, who advised that she had found a camera hidden in the bathroom. Officer Rosato went into the bathroom to investigate and found the camera where the victim described it. Officer Rosato observed that a hole had been crudely cut in a towel wrapped around a Ring camera. The towel-covered camera had a bar of soap on top of it and toiletry bottles on either side of it. The camera's lens was poking out of the hole in the towel. Officer Rosato secured the towel and Ring camera as evidence.

{¶ 10} Appellant arrived on scene shortly thereafter. Because Officer Rosato was aware that Ring cameras work on a cloud-based system that permit the owners of the device to access the recorded videos through an application on their phone, he seized appellant's cellphone. Appellant advised Officer Rosato that he had put the camera up in the bathroom because of his grandchildren. At no point in time while he was in appellant's home had Officer Rosato observed a sign advising people to wash their hands.

{¶ 11} Sergeant Jonathon Sever testified that he obtained a warrant to access the contents of appellant's cellphone and sent the phone to BCI for data extraction. Using Cellebrite and GreyKey programs, Scott recovered multiple videos recorded on March 8, 2021 by the bathroom Ring camera. Those videos were played for the jury. In the videos, appellant appeared to be checking the image that the Ring camera captured. Appellant, cellphone in hand, dropped his pants while standing in front of the toilet. He did not use the restroom, but rather pulled his pants up and left the bathroom. Appellant's naked buttocks were observed on the recording. In another video, appellant, again looking at his phone, makes an adjustment to the shelf where the camera is hidden. In yet another video, appellant stands at the bathroom sink, lifts his shirt, and rubs his chest while looking down at his cellphone, which he had sitting on the counter of the sink. Other videos

showed Criswell pulling down her pants, using the restroom, and wiping herself before pulling back up her pants. In those videos, Criswell is nude from the waist down and her buttocks and pubic area are exposed.

{¶ 12} Following the state's presentation of its case-in-chief, appellant moved for acquittal pursuant to Crim.R. 29, arguing the state had not met its burden of proving the purpose for which the camera had been placed in the bathroom. The court overruled appellant's motion for acquittal. Thereafter, appellant took the stand in his own defense. Appellant admitted he put the camera in the bathroom but claimed he did not do it with the purpose of viewing Criswell's or others' private areas. Rather, appellant claimed he put the camera in the bathroom to ensure that people were washing their hands. With the COVID-19 pandemic and his wife's serious health problems, appellant claimed he wanted to make sure people were maintaining good hygiene. Appellant testified that in addition to speaking with Criswell and his wife's other caregivers about the need to wash their hands, he had posted a sign on the refrigerator door, near his wife's caretaking schedule, that stated, "FAMILY AND FRIENDS PLEASE WASH/SANITIZE YOUR HANDS!" However, no handwashing sign was posted in the bathroom.

{¶ 13} Appellant admitted that he panicked when Criswell found the bathroom camera and he lied about it being placed there to keep an eye on his grandchildren. He further admitted that he knew from maneuvering the camera and seeing his own buttocks that others who used the toilet would also be showing their buttocks to the camera. Although he did not take steps to avoid capturing others' private parts, he denies that the camera was hidden with the purpose of viewing others' private areas. As for the video where he lifted his shirt and rubbed his chest after maneuvering the camera, he denies that he was trying to capture a topless person who may have been standing in the bathroom. He claims he was "just checking [him]self out" as he had been doing some

marathon training.

{¶ 14} After considering the foregoing testimony and evidence, the jury found appellant guilty of voyeurism. The trial court proceeded immediately to sentencing. Defense counsel and appellant both addressed the court, with appellant reading a letter of apology. Thereafter, the trial court imposed a 90-day jail term and a $750 fine on appellant and classified him as a tier I sex offender.

{¶ 15} Appellant timely appealed, raising two assignments of error for review.

{¶ 16} Assignment of Error No. 1:

{¶ 17} THE TRIAL COURT FAILED TO CONSIDER THE MANIFEST WEIGHT OF THE EVIDENCE STANDARD AND CONSIDER THE OHIO CRIM. RULE 29 MOTION.

{¶ 18} In his first assignment of error, appellant argues the trial court erred by denying his Crim.R. 29 motion for acquittal as the state failed to present sufficient evidence that he secretly filmed Criswell for the purpose of viewing her private areas. He further argues his conviction is against the manifest weight of the evidence.

{¶ 19} Crim.R. 29(A) provides that "[t]he court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal * * * if the evidence is insufficient to sustain a conviction of such offense or offenses." An appellate court reviews the denial of a Crim.R. 29(A) motion under the same standard as that used to review a sufficiency-of-the-evidence claim. *State v. Mota*, 12th Dist. Warren No. CA2007-06-082, 2008-Ohio-4163, ¶ 5.

{¶ 20} Whether the evidence presented at trial is legally sufficient to sustain a verdict is a question of law. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997); *State v. Grinstead*, 194 Ohio App.3d 755, 2011-Ohio-3018, ¶ 10 (12th Dist.). When reviewing the sufficiency of the evidence underlying a criminal conviction, an appellate court examines the evidence in order to determine whether such evidence, if believed, would convince

the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Paul*, 12th Dist. Fayette No. CA2011-10-026, 2012-Ohio-3205, ¶ 9. Therefore, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

{¶ 21} A manifest weight of the evidence challenge, on the other hand, examines the "inclination of the greater amount of credible evidence, offered at a trial, to support one side of the issue rather than the other." *State v. Barnett*, 12th Dist. Butler No. CA2011-09-177, 2012-Ohio-2372, ¶ 14. To determine whether a conviction is against the manifest weight of the evidence, the reviewing court must look at the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Graham*, 12th Dist. Warren No. CA2008-07-095, 2009-Ohio-2814, ¶ 66. "While appellate review includes the responsibility to consider the credibility of witnesses and weight given to the evidence, 'these issues are primarily matters for the trier of fact to decide.'" *State v. Barnes*, 12th Dist. Brown No. CA2010-06-009, 2011-Ohio-5226, ¶ 81, quoting *State v. Walker*, 12th Dist. Butler No. CA2006-04-085, 2007-Ohio-911, ¶ 26. An appellate court, therefore, will overturn a conviction due to the manifest weight of the evidence only in extraordinary circumstances to correct a manifest injustice when the evidence presented at trial weighs heavily in favor of acquittal. *Id*., citing *Thompkins*, 78 Ohio St.3d at 387. Furthermore, although the legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different, "[a] determination that a conviction is supported by the manifest

weight of the evidence will also be dispositive of the issue of sufficiency." *State v. Jones*, 12th Dist. Butler No. CA2012-03-049, 2013-Ohio-150, ¶ 19.

{¶ 22} Appellant was convicted of voyeurism in violation of R.C. 2907.08(B), which provides that "[n]o person shall knowingly commit trespass or otherwise secretly or surreptitiously videotape, film, photograph, broadcast, stream, or otherwise record another person, in a place where a person has a reasonable expectation of privacy, for the purpose of viewing the private areas of that person." A person acts knowingly when, regardless of purpose, "the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B). "A person acts purposely when it is the person's specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is the offender's specific intention to engage in conduct of that nature." R.C. 2901.22(A). "Surreptitious" is "commonly defined as meaning 'unauthorized and clandestine; done by stealth and without legitimate authority.'" *State v. Latimore*, 12th Dist. Butler No. CA2015-09-175, 2016-Ohio-2989, ¶ 11, quoting *Black's Law Dictionary* (10th Ed.2014) (Westlaw on-line) and *Black's Law Dictionary* (8th Ed.2004) 1485. Individuals' "private areas" include "the genitals, pubic area, buttocks, or female breast below the top of the areola, where nude or covered by an undergarment." R.C. 2907.01(R).

{¶ 23} Following our review of the record, we find that appellant's conviction for voyeurism is supported by sufficient evidence and is not against the manifest weight of the evidence. The state presented testimony and evidence proving all the essential elements of the offense, including the disputed "purpose of viewing the private areas" of the other person element. Through the testimony of Criswell, Officer Rosato, and Scott, the state established that appellant hid the camera in the bathroom and, without Criswell's

knowledge or consent, filmed her private areas when she used the restroom. The camera was hidden among various toiletry items, enclosed in a washrag with a hole cut out for the lens, and pointed in the direction of the toilet and sink. It also faced the only open area where Criswell could stand to change her clothing, something she routinely did at the end of her work shift before departing for another job. Video recordings of Criswell using the restroom and nude from the waist down were recovered from appellant's cellphone.

{¶ 24} Notwithstanding the foregoing evidence, appellant contends the state failed to prove he put the camera in the bathroom with the purpose of viewing Criswell's private areas. He contends the only direct evidence of intent offered at trial was his own testimony and that testimony established the camera was placed in the bathroom to observe handwashing practices. However, as the supreme court has long recognized, "[i]ntent 'can never be proved by the direct testimony of a third person and it need not be. It must be gathered from the surrounding facts and circumstances.'" *State v. Lott*, 51 Ohio St.3d 160, 168 (1990), quoting *State v. Johnson*, 56 Ohio St.2d 35, 38 (1978). Looking at the facts and circumstances surrounding appellant's actions, the jury was entitled to find that appellant had surreptitiously placed the camera in the bathroom with the intent of viewing Criswell's buttocks and other private areas. Appellant was captured on recordings maneuvering and angling the camera to get his desired view. Appellant tested the angle of the camera to ensure that the buttocks of an individual who used the toilet was visible. He also tested whether an individual changing in the open area near the bathroom sink would be visible on camera by standing by the sink, lifting his shirt, and rubbing his chest while looking at his cellphone.

{¶ 25} Appellant testified that despite knowing that the angle of the Ring camera would capture the private areas of an individual using the restroom or changing in the

bathroom, he did not place the camera with the intention of looking at another's private areas. Rather, he merely wanted to observe others' handwashing habits. The jury was entitled to reject appellant's explanation. "As the tier of fact in [the] case, the jury was in the best position to judge the credibility of witnesses and the weight to be given to the evidence." *State v. Johnson*, 12th Dist. Warren Nos. CA2019-07-076 and CA2019-08-080, 2020-Ohio-3501, ¶ 24. The jury clearly did not find appellant's explanation of his intent in placing the camera credible.

{¶ 26} Given the testimony and video evidence presented at trial, the jury was entitled to find beyond a reasonable doubt that appellant committed voyeurism. Appellant's conviction is supported by sufficient evidence and is not against the manifest weight of the evidence. The jury did not lose its way and create such a manifest miscarriage of justice that appellant's conviction must be reversed and a new trial ordered. Appellant's first assignment of error is, therefore, overruled.

{¶ 27} Assignment of Error No. 2:

{¶ 28} THE TRIAL COURT FAILED TO ALLOW A SENTENCING HEARING UNDER OHIO CRIM.R. 32, ALSO COMPRISING INADEQUATE ASSISTANCE OF COUNSEL.

{¶ 29} In his second assignment of error, appellant argues the trial court erred by sentencing him immediately after conviction and by denying him the right to allocution. Appellant contends that the trial court did not comply with the dictates of Crim.R. 32 and that his sentence should be reversed. He further argues that his trial counsel provided ineffective representation for failing to object to the lack of a full sentencing hearing or the violation of his right to allocution.

**Right to Allocution**

{¶ 30} Crim.R. 32(A) provides that "[s]entence shall be imposed without

- 10 -

unnecessary delay." "[T]he time of pronouncing sentence is within the discretion of the trial court." *Neal v. Maxwell*, 175 Ohio St. 201, 202 (1963). A judge may pronounce sentence immediately after a verdict. *See Daugherty v. State*, 24 Ohio App. 212, 217 (5th Dist.1925); *State ex rel. Adkins v. Mefford*, 75 Ohio App. 215, 217 (1st. Dist.1944).

{¶ 31} At the time of imposing a sentence, Crim.R. 32(A)(1) directs that a trial court must "[a]fford counsel an opportunity to speak on behalf of the defendant." The rule further provides that "the trial court shall 'address the defendant personally' and ask whether he or she wishes to make a statement on [his or] her own behalf or present any information in mitigation of punishment." *State v. Roberts*, 110 Ohio St.3d 71, 2006-Ohio-3665, ¶ 166, quoting Crim.R. 32(A)(1). "The purpose of allocution is to permit the defendant to speak on his own behalf or present any information in mitigation of punishment." *State v. Short*, 129 Ohio St.3d 360, 2011-Ohio-3641, ¶ 85. "[T]he right to allocution created by Crim.R. 32(A)(1), something which courts must painstakingly adhere to in both capital and noncapital cases, 'does not merely give the defendant a right to allocution; it imposes an affirmative requirement on the trial court to ask if he or she wishes to exercise that right.'" *State v. Haynes*, 12th Dist. Butler No. CA2010-10-273, 2011-Ohio-5743, ¶ 28, quoting *State v. Meyers*, 97 Ohio St.3d 335, 2002-Ohio-6658, ¶ 135. This inquiry is "much more than an empty ritual: it represents a defendant's last opportunity to plead his case or express remorse." *State v. Green*, 90 Ohio St.3d 352, 359-360 (2000).

{¶ 32} Although not considered a constitutional right, the right of allocution is firmly rooted in the common-law tradition. *State v. Wesley*, 12th Dist. Butler No. CA2015-04-077, 2015-Ohio-5031, ¶ 23; *State v. Copeland*, 12th Dist. Butler No. CA2007-02-039, 2007-Ohio-6168, ¶ 6. As a result, this right is "'both absolute and not subject to waiver due to a defendant's failure to object.'" *Haynes* at ¶ 27, quoting *State v. Collier*, 2d Dist.

Clark Nos. 2006 CA 102 and 2006 CA 104, 2007-Ohio-6349, ¶ 92. Therefore, in cases where the trial court imposes a sentence without first asking the defendant whether he wishes to exercise his right of allocution, "'resentencing is required unless the error is invited error or harmless error.'" *State v. Osie*, 140 Ohio St.3d 131, 2014-Ohio-2966, ¶ 179, quoting *State v. Campbell*, 90 Ohio St.3d 320 (2000), paragraph three of the syllabus.

{¶ 33} Contrary to appellant's assertions, the record in the present case reflects that the trial court complied with Crim.R. 32(A) before imposing a sentence on appellant. After the verdict was read at trial, the court proceeded directly to sentencing, as it was permitted to do. *See Neal*, 175 Ohio St. at 201; *Daugherty*, 24 Ohio App. at 217. The court asked defense counsel if he had any comments on appellant's behalf. Defense counsel spoke of the difficult situation appellant was going through as a result of his wife's health problems, noted appellant did not have a criminal record, and asked the court to impose "probation in lieu of [a] jail sentence" as appellant was "going to have to register as a sex offender which will be a pretty significant punishment for him." Defense counsel also informed the court that appellant had prepared a statement of apology for the victim, which he wished to read to the court.

{¶ 34} After defense counsel finished speaking, the court directly addressed appellant and the following discussion occurred:

[THE COURT]: Mr. Shaw, anything you'd like to say?

[Appellant]: No sir.

[Defense Counsel]: You want to read the statement, right?

[Appellant]: Oh, yes sir, okay.

[THE COURT]: Is she, [the victim] does not wish to be in here?

- 12 -

[Prosecutor]: That's correct, Your Honor.

[THE COURT]: Okay.

[Appellant]: Erin, I'm sorry for putting you in this situation. I'm sorry for invading your privacy. I'm sorry for putting you in the position of questioning trust in people, especially being in the profession you are in. While a lot of the choices and decisions I [was] making in March of 2021 were made during troubled times, under distress because of my personal situation and Covid, by no means will I ever try to justify the idea of staging a camera and invading your privacy. Any information that I would have obtained was done so only in an effort to protect the person I loved and cared for, for more than half my life. Any information obtained would not have been exposed to anyone at any time. Sincerely, Troy Shaw.

[THE COURT]: Okay…Did you wish to make any comments on the case?

[Prosecutor]: Your Honor, I've had discussions with the victim in this case, her life has been greatly impacted. She checks for cameras everywhere she goes, especially in bathrooms now. In fact, she noted to me that she noted a camera on a shelf just outside of the women's restroom in this building. So she is keenly aware of, of those things and taking precautions for those. But based [on] my conversations with her, we do have a recommendation to make of probation. We are not asking for jail time in this particular case. That's with the involvement and consent of the victim. We believe that registration as a tier I sex offender for 15 years is sufficient punishment.

[THE COURT]: I don't think it's a probation type case right now. * * *

{¶ 35} Appellant contends the foregoing was insufficient to satisfy Crim.R. 32(A) and asserts that "[h]ad the court allowed a real sentencing hearing," he would have explained (1) his contrition for the bad judgment in placing the camera, (2) his complete lack of any criminal record up to that point, (3) his 30-year tenure working at the same local company and his good standing and works in the community, and (4) the fact that a maximum sentence would mean he would lose his job and quite possibly his pension. We find no merit to appellant's arguments. The dialogue between the court, appellant,

- 13 -

and defense counsel demonstrates that the court afforded defense counsel the opportunity to speak on appellant's behalf and that the court personally addressed the defendant and asked him if he wished to speak at sentencing. Appellant was given the opportunity to speak on his own behalf and to present information in mitigation of punishment. The trial court, therefore, complied with the requirements of Crim.R. 32 and appellant was provided with his right to allocution.

### Ineffective Assistance of Counsel Claim

{¶ 36} Appellant argues that defense counsel provided ineffective assistance of counsel because counsel failed to object to the lack of a full sentencing hearing or the violation of appellant's right to allocution. "[T]o prevail on an ineffective-assistance-of-counsel claim, a defendant must prove that counsel's performance was deficient and that the defendant was prejudiced by counsel's deficient performance." *State v. Davis*, 159 Ohio St.3d 31, 2020-Ohio-309, ¶ 10, citing *State v. Bradley*, 42 Ohio St.3d 136, 141-142 (1989) and *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052 (1984). Here, appellant cannot prove either of these requirements. As discussed above, appellant was provided with a full sentencing hearing and given the right to allocution. Defense counsel was, therefore, not deficient and appellant cannot demonstrate prejudice.

{¶ 37} As appellant did not receive ineffective assistance from his trial counsel and the record reflects the trial court complied with the dictates of Crim.R. 32(A) and afforded appellant with his right to allocution at sentencing, we find no merit to his arguments and overrule his second assignment of error.

{¶ 38} Judgment affirmed.


PIPER and BYRNE, JJ., concur.