[Cite as *State v. Gerdes*, 2019-Ohio-913.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

| | | |
|---|---|---|
| STATE OF OHIO/CITY OF HAMILTON, | : | |
| Appellee, | : | CASE NO. CA2018-03-056 |
| | : | O P I N I O N |
| - vs - | | 3/18/2019 |
| | : | |
| ANNE M. GERDES, | : | |
| Appellant. | : | |

CRIMINAL APPEAL FROM HAMILTON MUNICIPAL COURT
Case No. 17CRB04234

Thomas A. Dierling, Hamilton City Prosecutor, 345 High Street, Hamilton, Ohio, 45011, for appellee

Herdman, Summers, Revelson & Cesta, LLP, Joseph A. Cesta, 1160 East Main Street, P.O. Box 36, Lebanon, Ohio, 45036, for appellant

**RINGLAND, P.J.**

{¶ 1} Appellant, Anne Gerdes, appeals her conviction in the Hamilton Municipal Court for domestic violence. For the reasons discussed below, this court affirms Gerdes' conviction.

{¶ 2} Gerdes and her husband, Martin, were having marital difficulties. One evening, Gerdes was sleeping in the bedroom that she shared with Martin. Because their marital

problems had recently escalated, Gerdes locked the door while she slept. Although Martin knew that Gerdes was asleep and that their bedroom door was locked, he used a screwdriver to unlock the door and retrieve a blanket for the couple's son. While getting the blanket, Martin noticed his alarm clock was unplugged. Because Martin intended to sleep in the bed with Gerdes and needed to set an alarm for the following morning, Martin reached over the bed's headboard to plug in the alarm clock. At that time, an altercation ensued between Martin and Gerdes. Eventually, Martin left the bedroom and called the police. The responding officer arrived at the couple's home and spoke with Gerdes and Martin.

{¶ 3} As a result, Gerdes was arrested and charged with one count of domestic violence in violation of R.C. 2919.25(A), a misdemeanor of the first degree. The matter proceeded to a jury trial. During trial, the state presented testimony from Martin. Gerdes testified in her own defense and presented testimony from the responding officer. After considering the evidence presented, the jury found Gerdes guilty of domestic violence. Gerdes now appeals, raising two assignments of error. For the ease of analysis, we address the assignments of error collectively.

{¶ 4} Assignment of Error No. 1:

{¶ 5} THE COURT OF COMMON PLEAS [sic] ERRED BECAUSE THE EVIDENCE PRESENTED AT TRIAL IS LEGALLY INSUFFICIENT TO SUSTAIN A VERDICT OF GUILTY.

{¶ 6} Assignment of Error No. 2:

{¶ 7} THE COURT OF COMMON PLEAS [sic] ERRED BECAUSE A VERDICT OF GUILTY IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE PRESENTED AT TRIAL.

{¶ 8} Gerdes challenges the sufficiency and the weight of the evidence supporting her conviction. Gerdes argues that the state failed to present sufficient evidence that her

actions resulted in sufficient physical harm to Martin. Gerdes further contends that her conviction was not supported by the weight of the evidence because Martin suffered no physical harm or injury, and any physical contact by Gerdes was an act of self-defense.

{¶ 9} When reviewing the sufficiency of the evidence underlying a criminal conviction, an appellate court examines the evidence in order to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Paul*, 12th Dist. Fayette No. CA2011-10-026, 2012-Ohio-3205, ¶ 9. Therefore, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

{¶ 10} A manifest weight of the evidence challenge, on the other hand, examines the "inclination of the greater amount of credible evidence, offered at a trial, to support one side of the issue rather than the other." *State v. Barnett*, 12th Dist. Butler No. CA2011-09-177, 2012-Ohio-2372, ¶ 14. To determine whether a conviction is against the manifest weight of the evidence, the reviewing court must look at the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Graham*, 12th Dist. Warren No. CA2008-07-095, 2009-Ohio-2814, ¶ 66. "While appellate review includes the responsibility to consider the credibility of witnesses and weight given to the evidence, 'these issues are primarily matters for the [jury] to decide.'" *State v. Barnes*, 12th Dist. Brown No. CA2010-06-009, 2011-Ohio-5226, ¶ 81, quoting *State v. Walker*, 12th Dist. Butler No. CA2006-04-085, 2007-Ohio-911, ¶ 26.

{¶ 11} An appellate court, therefore, will overturn a conviction due to the manifest weight of the evidence only in extraordinary circumstances when the evidence presented at trial weighs heavily in favor of acquittal. *Id.*, citing *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997). Furthermore, "[a] determination that a conviction is supported by the manifest weight of the evidence will also be dispositive of the issue of sufficiency." *State v. Jones*, 12th Dist. Butler No. CA2012-03-049, 2013-Ohio-150, ¶ 19.

{¶ 12} Gerdes was convicted of domestic violence. Pursuant to R.C. 2919.25(A), "No person shall knowingly cause or attempt to cause physical harm to a family or household member." Physical harm means "any injury, illness, or other physiological impairment regardless of its gravity or duration." R.C. 2901.01(A)(3). In general, "a defendant may be found guilty of domestic violence even if the victim sustains only minor injuries, or sustains no injury at all." *State v. Kellum*, 12th Dist. Butler No. CA2009-03-081, 2009-Ohio-6743, ¶ 16. Accordingly, any harm is sufficient to support a conviction for domestic violence as long as the "state presents evidence that the offender caused physical harm to the victim through [her] actions." *Id.* The gravity or duration of the injury is not a factor for consideration. *Id.* at ¶ 15.

{¶ 13} Martin testified at trial regarding the altercation between himself and Gerdes. According to Martin's testimony, when he entered the bedroom to find their son's blanket, Gerdes began screaming at him. At that time, he retrieved the blanket and noticed that his alarm clock was unplugged. While Martin was reaching over the bed's headboard to plug in the alarm clock, Gerdes hit him in the face with a pillow. After being struck with the pillow, Martin told Gerdes to stop and proceeded to reach behind the headboard to plug in his alarm clock. While he was reaching behind the headboard the second time, Martin testified Gerdes kicked him in his side and continued yelling at him. Gerdes then grabbed the headboard and

began pushing and pulling, crushing Martin's arm between the headboard and the wall. Martin testified he "kept telling [Gerdes] stop * * * you're crushing my arm, just stop."

{¶ 14} After pushing the headboard six or seven times, Gerdes stopped and Martin successfully plugged in his alarm clock. Martin then briefly left the bedroom to get blankets for himself. When he returned to the room and got into bed, Gerdes started kicking Martin in the side and yelling at him to leave.

{¶ 15} According to Martin's testimony, Gerdes hit him in the face with a pillow, kicked him in the side seven or nine times, and smashed his arm between the headboard and the wall six or seven times. Martin further indicated that although he did not sustain any outwardly observable injury because of the incident or notice any injuries that evening, his elbow and side were sore the following day.

{¶ 16} Gerdes testified in her own defense and offered an alternate version of the altercation. Notably, Gerdes denied hitting Martin in the face with the pillow, using the headboard to smash Martin's arm, and kicking Martin. According to Gerdes, she locked the bedroom door and went to sleep because she "was afraid of what [Martin] was going to do" and "could tell something was brewing." Martin later entered the room and began "shuffling around" and "shoving in the bed next to" her. At that time, Gerdes asked Martin to "be a gentleman and sleep on the couch" and to "get out, get out, get out, get out[.]" Gerdes indicated Martin continued shoving himself into the bed but ultimately gave up because Gerdes reached her foot over to "hold and to anchor [Martin]" and he "couldn't out-shove [her]."

{¶ 17} After a thorough review of the record, we find Gerdes' conviction was not against the manifest weight of the evidence. The state presented evidence that, if believed, established Gerdes caused or attempted to cause Martin physical harm by hitting him with the pillow, crushing his arm with the headboard, and kicking him. Additionally, Martin testified

that he felt sore the day after the incident, which we find is indicative of an injury, regardless of its gravity. As such, Martin's testimony supported all elements of the crime of domestic violence, and "a conviction is not against the manifest weight of the evidence simply because the jury believed the prosecution testimony." *State v. Erickson*, 12th Dist. Warren No. CA2014-10-131, 2015-Ohio-2086, ¶ 42. It is apparent that the jury found the testimony of Martin to be more credible than that of Gerdes. "The credibility of the witnesses is paramount in cases such as this where the evidence amounts to little more than a matter of 'he said, she said.'" *State v. Chasteen*, 12th Dist. Butler No. CA2013-12-223, 2014-Ohio-4622, ¶14. Here, we do not find that the trial court clearly lost its way and created a manifest miscarriage of justice when it found Martin more credible than Gerdes and convicted Gerdes of domestic violence.

{¶ 18} Because Gerdes' conviction for domestic violence is not against the manifest weight of the evidence, it is also supported by sufficient evidence. Therefore, Gerdes' two assignments of error are overruled.

{¶ 19} Judgment affirmed.

PIPER and M. POWELL, JJ., concur.