[Cite as *State v. Enoch*, 2020-Ohio-3406.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NO. CA2019-07-117 |
| | : | O P I N I O N |
| - vs - | | 6/22/2020 |
| | : | |
| TERRANCE ENOCH, | : | |
| Appellant. | : | |

CRIMINAL APPEAL FROM HAMILTON MUNICIPAL COURT
Case No. 19CRB00648

Letitia S. Block, City of Hamilton Prosecuting Attorney, 345 High Street, Suite 710, Hamilton, Ohio 45011, for appellee

Christopher P. Frederick, 300 High Street, Suite 550, Hamilton, Ohio 45011, for appellant

**HENDRICKSON, P.J.**

{¶ 1} Appellant, Terrance Enoch, appeals from his conviction in the Hamilton Municipal Court for domestic violence. For the reasons set forth below, we affirm his conviction.

{¶ 2} On February 26, 2019, appellant was charged by complaint with domestic violence in violation of R.C. 2919.25(A), a misdemeanor of the first degree. The charge

arose out of an incident occurring on January 18, 2019, involving appellant and Aries Goens, the mother of appellant's daughter. Appellant was alleged to have struck Goens multiple times and shoved her into a wall.

{¶ 3} Appellant pled not guilty to the charge and a bench trial commenced on May 29, 2019. Goens was the only witness to testify on behalf of the state. She stated that she and appellant have a daughter together and were living together in a home in Hamilton, Butler County, Ohio in January 2019. On the evening of January 18, 2019, appellant and Goens started arguing over their finances. The argument turned physical when appellant picked up a pair of his daughter's shoes and threw them at Goens, with one shoe hitting Goens in the face and the other missing her. Goens testified that as she sat on the living room couch holding her daughter, appellant approached her and "smacked" her twice on the left side of her face with his open hand before he went upstairs. Goens called appellant's mother via FaceTime to report appellant's actions and to ask for help in getting appellant to leave the house. Appellant heard Goens on the phone with his mother when he came downstairs and became angry. Appellant punched Goens in the face and took her phone from her. Goens followed appellant into the kitchen to try to retrieve her phone. Appellant pushed Goens into a wall and caused Goens to trip and fall over bottled water stacked on the kitchen floor. After getting up from the floor, Goens again attempted to get her phone back from appellant but he threw the phone against the wall, causing the phone's screen protector to shatter.

{¶ 4} Goens testified she went back into the living room and grabbed her daughter. Appellant followed her and hit her again. He then tried to pull the child out of Goens' arms but was unsuccessful. Appellant left the home and Goens called her stepfather, who called the police to report the incident. Goens then called appellant's mother again. Shortly thereafter, Officer Cheryl Lambing arrived at Goens' home.

{¶ 5}  Goens gave a statement to the officer and the officer took photographs of Goens' face.  However, the photographs did not show the extent of the swelling or bruising to her face, which Goens explained was more visible in the following days.  Goens testified she took photographs of her face "a day or so after" the incident.  These photographs, as well as the photographs taken by the officer, were admitted into evidence.  The photographs Goens personally took showed a swollen left cheek and slight bruising around her right eye.  The photographs did not have a date or time stamp.

{¶ 6}  On cross-examination, Goens was questioned about the written statement she made to the police on the evening of January 18, 2019, as well as statements she made about the incident in a petition for a domestic violence civil protection order ("CPO").  In her police statement, Goens stated appellant threw a single shoe at her before "smacking" her twice and going upstairs.  Goens' police statement omits any mention of tripping over bottled water and falling down in the kitchen.  The statement further refers to appellant "hitting" her, rather than "punching" her, when he found her on the phone with his mother.  Goens explained these inconsistencies by stating that she was upset and "shaken up" at the time she wrote out her police statement.

{¶ 7}  As for Goens' statement in support of a CPO, Goens included details that she had not put in her police statement or testified to on direct examination.  The petition for a CPO, which Goens filled out a few days after the incident, indicated that after appellant threw shoes at Goens, he "proceeded to bend [her] arm back" before smacking her.  The petition further stated that when appellant discovered Goens on the phone with his mother he "punched [her] twice in the face so hard that [she] bit [her] tongue, causing [her] mouth to bleed."  Goens acknowledged that she had not reported biting her tongue in her police statement or shown Officer Lambing her tongue.  Goens explained that the petition for a CPO contained more details than her written police statement because she had an

opportunity to think about the events that had occurred.

{¶ 8} Goens was also cross-examined about a statement contained in Officer Lambing's police report, wherein the officer indicated that in addition to Goens reporting that appellant punched her in the face multiple times and shoved her against the wall, Goens had also stated that appellant "slammed her on the couch." Goens denied that she ever made a statement that appellant slammed her on the couch, stating that the officer's report was inaccurate in that respect. Finally, Goens admitted on cross-examination that she used to do makeup professionally but stated it had been "two/three years" since she had any clients.

{¶ 9} Following Goens' testimony, the state rested its case-in-chief and appellant called Officer Lambing and his mother as witnesses. Officer Lambing testified that upon arriving at Goens' residence on the evening of January 18, 2019 on a report of domestic violence, she discovered that appellant was no longer at the scene. She made contact with a visibly upset Goens, who reported that she had been slapped and punched multiple times by appellant. Despite Goens' claims, Officer Lambing did not observe any physical injuries to Goens, which the officer noted in her police report. The officer nonetheless took photographs of Goens' face. At no point in time did Goens inform the officer that appellant's actions had caused her to bite her tongue and Goens did not show the officer any injury to her mouth or tongue.

{¶ 10} Officer Lambing was shown the photographs Goens took of her own face a day or two after the attack. Officer Lambing testified the photographs were not consistent with what she observed on January 18, 2019. With respect to her police report, Officer Lambing testified that it was made immediately after leaving Goens' residence and it accurately reflected Goens' statement about the events that had transpired with appellant.

{¶ 11} Appellant's mother testified that Goens called her the evening of January 18,

2019 using FaceTime. When appellant's mother answered, an upset Goens stated that she wanted appellant out of her home as "she was tired of him being disrespectful." Goens told appellant's mother that appellant had hit her in the face, but appellant's mother did not notice any injuries to Goens face or anything else that caused her to be concerned. At some point, the phone call abruptly ended. Appellant's mother called Goens back using FaceTime. Goens answered but laid the phone down so that all appellant's mother saw was the ceiling. Appellant's mother could still hear what was happening, and she did not hear any kind of commotion or yelling. At some point, Goens picked the phone back up and told appellant's mother that appellant had run out the door.

{¶ 12} Appellant took the stand in his own defense, testifying that he and Goens had a verbal argument over finances. He admitted that he "tossed" a shoe at Goens, which hit Goens in the chest, but he denied that he slapped, punched, struck, or pushed Goens during their argument. Appellant indicated he tried to remove his daughter from Goens' arms so that he could take his daughter with him when he left to go to his parents, but he denied that he physically harmed Goens during this process. He stated that when it became clear that Goens would not let him take his daughter, he left the home alone.

{¶ 13} Following appellant's testimony, the trial court took the matter under advisement. On June 12, 2019, the trial court found appellant guilty of domestic violence. The trial court found Goens' testimony credible, noting that Goens version of events was "basically consistent throughout." The court stated, in relevant part, as follows:

> It was not verbatim, it wasn't exactly right, or exactly the same thing every time, but that didn't confront me, because I think when people are exactly right on everything a number of times, that might be because they're making it up.

> Instead, the way she explained it in court, the Court believes she was testifying honestly and believably, that he slapped her that day twice and that he hit her, and it was characterized as a punch, as a hit, different ways.

- 5 -

I think that's what happens when people are in these situations. They're not trying to write a novel to correctly identify all the nuances of it, they're like, I got hit, I got slapped, I got punched. But she was always clear that he slapped her twice and hit her.

And there were photos taken of the incident. And on that day the photos were taken, and I know the officer testified that there were no visible injuries, but when I looked at the photos, especially in Exhibit No. 1 [the officer's photographs], compared it to Exhibit No. 2, which was the photograph [Goens took] the next day, [and] her left cheek, where she got slapped, was puffy in both pictures.

So even though the officer said it didn't show any visible injuries, the Court's perspective was that it did show injuries. In addition to that, in Exhibit No. 4, there was evidence that her eye was damaged, too. * * *

* * [Appellant's] mother had a unique perspective on this, because she was on the phone when part of it was going on, and she clearly testified that while it was going on, that Ms. Goens exclaimed that he had hit her, and the Court finds that to be important testimony.

And then finally, the Defendant testified. The thing about his testimony that struck me was that he was clear that he wanted to get out of there before the police got there. And I'm thinking, why do you want to do that if you didn't do anything.

And so, I put all of that together and I believe the State has proven their case beyond a reasonable doubt, and I'm finding the Defendant to be guilty of the charge of domestic violence.

The court sentenced appellant to two years of community control and 90 days in jail, with 90 days suspended. The court also ordered appellant to complete a domestic violence class and to pay a $200 fine plus court costs.

{¶ 14} Appellant appealed his conviction, raising two assignments of error for review.

{¶ 15} Assignment of Error No. 1:

{¶ 16} THE STATE PRESENTED INSUFFICIENT EVIDENCE TO CONVICT MR. ENOCH OF DOMESTIC VIOLENCE.

{¶ 17} Assignment of Error No. 2:

- 6 -

{¶ 18} MR. ENOCH'S CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 19} In his first assignment of error, appellant argues his conviction for domestic violence is not supported by sufficient evidence as the state failed to present evidence that he caused "physical harm" to Goens. In his second assignment of error, he argues his conviction is against the manifest weight of the evidence because Goens' testimony was "internally inconsistent and directly contradicted by other evidence." For ease of discussion, we will address the assignments of error together.

{¶ 20} Whether the evidence presented at trial is legally sufficient to sustain a verdict is a question of law. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997); *State v. Grinstead*, 194 Ohio App.3d 755, 2011-Ohio-3018, ¶ 10 (12th Dist.). When reviewing the sufficiency of the evidence underlying a criminal conviction, an appellate court examines the evidence in order to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Paul*, 12th Dist. Fayette No. CA2011-10-026, 2012-Ohio-3205, ¶ 9. Therefore, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

{¶ 21} A manifest weight of the evidence challenge, on the other hand, examines the "inclination of the greater amount of credible evidence, offered at a trial, to support one side of the issue rather than the other." *State v. Barnett*, 12th Dist. Butler No. CA2011-09-177, 2012-Ohio-2372, ¶ 14. To determine whether a conviction is against the manifest weight of the evidence, the reviewing court must look at the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created

- 7 -

such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Graham*, 12th Dist. Warren No. CA2008-07-095, 2009-Ohio-2814, ¶ 66. "While appellate review includes the responsibility to consider the credibility of witnesses and weight given to the evidence, 'these issues are primarily matters for the trier of fact to decide.'" *State v. Barnes*, 12th Dist. Brown No. CA2010-06-009, 2011-Ohio-5226, ¶ 81, quoting *State v. Walker*, 12th Dist. Butler No. CA2006-04-085, 2007-Ohio-911, ¶ 26. An appellate court, therefore, will overturn a conviction due to the manifest weight of the evidence only in extraordinary circumstances when the evidence presented at trial weighs heavily in favor of acquittal. *Id.*, citing *Thompkins*, 78 Ohio St.3d at 387. Furthermore, although the legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different, "[a] determination that a conviction is supported by the manifest weight of the evidence will also be dispositive of the issue of sufficiency." *State v. Jones*, 12th Dist. Butler No. CA2012-03-049, 2013-Ohio-150, ¶ 19.

{¶ 22} Appellant was convicted of domestic violence in violation of R.C. 2919.25(A), which provides that "[n]o person shall knowingly cause or attempt to cause physical harm to a family or household member." A person acts knowingly when, regardless of purpose, "the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B). A "family or household member" includes "[t]he natural parent of any child of whom the offender is the other natural parent or is the putative other natural parent." R.C. 2919.25(F)(1)(b).

{¶ 23} Appellant argues the state failed to present any evidence demonstrating appellant caused physical harm to Goens. Physical harm means "any injury, illness, or other physiological impairment regardless of its gravity or duration." R.C. 2901.01(A)(3). Therefore, "any harm is sufficient to support a conviction for domestic violence as long as the 'state presents evidence that the offender caused physical harm to the victim through

[his] actions.'" *State v. Gerdes*, 12th Dist. Butler No. CA2018-03-056, 2019-Ohio-913, ¶ 12, quoting *State v. Kellum*, 12th Dist. Butler No. CA2009-03-081, 2009-Ohio-6743, ¶ 16.

{¶ 24} After reviewing the record, weighing inferences and examining the credibility of the witnesses, we find that appellant's conviction for domestic violence is supported by sufficient evidence and is not against the manifest weight of the evidence. The state presented testimony and evidence proving all the essential elements of the offense beyond a reasonable doubt, including the disputed "physical harm" element.

{¶ 25} Goens' and appellant's trial testimony established that Goens and appellant lived together at a home in Hamilton, Ohio and that the two have a daughter together, thereby making Goens a "family or household member" as contemplated by R.C. 2919.25. Goens' testimony, if believed by a trier of fact, further established that on January 18, 2019, she and appellant had an argument that turned violent when appellant threw a shoe at her, smacked her on the face twice with his open palm, punched her on the face, and pushed her against a wall. Goens testified she was harmed by appellant's actions, as her left cheek became swollen and there was bruising to her right eye. Pictures taken by Goens in the "day or so after" the incident depicted these injuries. Though the injuries were not pronounced, the harm Goens suffered was sufficient to support appellant's conviction for domestic violence as the state presented evidence that the swelling and bruising were caused by appellant's actions. *See Gerdes* at ¶ 17.

{¶ 26} Appellant maintains that even if there was sufficient evidence to convict him of domestic violence, the manifest weight of the evidence "weigh[s] heavily in favor of acquittal." Appellant points out that Goens' version of events differs significantly than his testimony about the incident, and he argues that Goens' testimony is not credible as Goens provided different details about the attack each time she gave a statement about the event. Appellant contends the trial court clearly lost its way by failing to consider the

inconsistencies between Goens' trial testimony, her written police statement, and her statement in support of a CPO. Appellant also suggests that the pictures Goens took of her face in the "day or so after" the purported attack are not credible as Goens was a makeup artist who had the ability "fabricate evidence to bolster her false accusations." He argues additional weight should have been given to Officer Lambing's testimony that there were no observable injuries to Goens' face on the evening of January 18, 2019.

{¶ 27} "In a bench trial, the trial court acts as the factfinder and determines both the credibility of the witnesses and the weight of the evidence." *State v. Lowry*, 12th Dist. Warren Nos. CA2019-07-070 and CA2019-07-071, 2020-Ohio-1554, ¶ 19. The court "take[s] note of any inconsistencies in the witness' testimony and resolve[s] them accordingly, believing all, part, or none of each witness's testimony." *State v. Schils*, 12th Dist. Clermont No. CA2019-08-067, 2020-Ohio-2883, ¶ 18. The trial court considered Goens' inconsistent statements but nonetheless concluded that Goens was a credible witness. As the trial court noted, the essential allegations of domestic violence remained the same in all of Goens' statements. Goens consistently stated appellant threw shoes at her before striking her in the face multiple times, causing injury to her face. The trial court was free to discredit appellant's testimony that he did not strike Goens in the face, thereby causing her cheek to swell and her eye to bruise. "[W]hen conflicting evidence is presented at trial, a conviction is not against the manifest weight of the evidence simply because the tier of fact believed the prosecution testimony." *State v. Lunsford*, 12th Dist. Brown No. CA2010-10-021, 2011-Ohio-6529, ¶ 17.

{¶ 28} The trial court was also entitled to rely on the photographs taken by both Officer Lambing and Goens in concluding that Goens' suffered physical harm as a result of appellant's actions. The photographs, combined with Goens' testimony, provide credible evidence that Goens was physically harmed when appellant struck her multiple times in the

face.

{¶ 29} Accordingly, given the testimony and photographic evidence admitted at trial, we find that appellant's conviction for domestic violence is supported by sufficient evidence and is not against the manifest weight of the evidence. Appellant's first and second assignments of error are overruled.

{¶ 30} Judgment affirmed.

S. POWELL and RINGLAND, JJ., concur.