[Cite as *State v. Johnson*, 2020-Ohio-3501.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NOS. CA2019-07-076 |
| | | CA2019-08-080 |
| | : | |
| - vs - | : | O P I N I O N |
| | : | 6/29/2020 |
| RICHARD A. JOHNSON, | : | |
| Appellant. | : | |

CRIMINAL APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
Case Nos. 18CR34455 and 19CR35361

David P. Fornshell, Warren County Prosecuting Attorney, Kirsten A. Brandt, 520 Justice Drive, Lebanon, Ohio 45036, for appellee

Anzelmo Law, James A. Anzelmo, 446 Howland Drive, Gahanna, Ohio 43230, for appellant

**RINGLAND, J.**

{¶1} Appellant, Richard Johnson ("Richard"), appeals from his conviction for domestic violence in the Warren County Court of Common Pleas. For the reasons detailed below, we affirm.

{¶2} On June 16, 2018, at approximately 8:30 p.m., Brian Kratzer observed a woman lying in a gutter approximately 25 feet from the corner of Natalie Lane and West

Turtlecreek Union Road in Warren County.  When Kratzer approached, he observed that the woman was covered in blood caused by a large laceration on the right side of her face extending from her ear to her jaw line.  The woman identified herself as Johnna Johnson.  When Kratzer asked Johnna what had happened, she replied, "my husband stabbed me [with a beer bottle].  * * * We're going through a divorce."

{¶3}   Kratzer called 911 for emergency assistance.  As he did, Kratzer observed a green Chevrolet pickup truck drive by the scene.  Kratzer observed the driver of the vehicle sternly address Johnna as she lay in the gutter.  Kratzer later identified the man in the green truck as Richard Johnson, Johnna's husband.

{¶4}   When EMTs arrived, Johnna was transported by ambulance to Bethesda North Hospital.  During transport, Johnna started hyperventilating and experienced multiple fainting episodes.  Johnna was placed on oxygen but continued to have fainting spells.  At one point, Johnna stopped responding to verbal stimuli so emergency personnel applied a sternal rub.  This procedure was repeated multiple times until Johnna arrived at the hospital.

{¶5}   Upon arrival, Johnna indicated that injuries were "really painful" and rated her pain as a ten out of ten.  Johnna reiterated that her husband had struck her in the face with a broken glass beer bottle.  The laceration of Johnna's face was approximately ten centimeters long and required ten sutures.

{¶6}   While Johnna was receiving medical treatment, law enforcement was dispatched to Richard's residence where his green Chevrolet pickup truck was parked in the driveway.  After failed attempts knocking on Richard's front door, deputies began giving verbal commands over a cruiser PA system, demanding that anyone inside the residence come to the door.  Deputies continued making announcements and chirping the PA system approximately every 15 seconds for the next 30 minutes.  Deputies later learned that

Richard was calling and texting neighbors from inside his residence.

{¶7} After approximately 30 minutes, law enforcement was permitted to force entry into the house after receiving Johnna's permission to enter. After one more attempt to knock and announce their presence, deputies forcibly entered the residence. Law enforcement promptly found Richard in the home and arrested him. Following Richard's arrest, deputies noticed a blood trail leading from the back of Richard's home through the neighbor's yard.

{¶8} Richard was subsequently indicted for one count of domestic violence in violation of R.C. 2919.25(A), a third-degree felony due to his prior convictions. The matter proceeded to a jury trial. During trial, Johnna recanted her statements and testified that she had been intoxicated on the night in question and had drunkenly fallen onto the pile of rocks outside the home causing the laceration to her face.

{¶9} The state presented rebuttal testimony in the form of her written statements to police and in conversations she had with her probation officer prior to trial. According to Johnna's probation officer, Johnna told her that she did not want to testify and planned to lie on the stand because she was terrified that Richard would kill her.

{¶10} Following deliberations, the jury found Richard guilty of domestic violence. In the interim, Richard pled guilty to violating a protection order in violation of R.C. 2919.26 by attempting to contact Johnna. The trial court sentenced Richard to 24 months in prison for the domestic violence conviction. The trial court ordered that his 24-month sentence be served consecutive to his six-month sentence for violating a protection order. Richard now appeals, raising four assignments of error for review.

{¶11} Assignment of Error No. 1:

{¶12} RICHARD JOHNSON'S CONVICTION FOR DOMESTIC VIOLENCE IS

BASED ON INSUFFICIENT EVIDENCE, IN VIOLATION OF THE DUE PROCESS CLAUSE OF THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND SECTIONS 1 & 16, ARTICLE I OF THE OHIO CONSTITUTION.

{¶13} Assignment of Error No. 2:

{¶14} RICHARD JOHNSON'S CONVICTION FOR DOMESTIC VIOLENCE IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE IN VIOLATION OF THE DUE PROCESS CLAUSE OF THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND SECTIONS 1 & 16, ARTICLE I OF THE OHIO CONSTITUTION.

{¶15} In his first and second assignments of error, Richard argues that his conviction for domestic violence is based on insufficient evidence and is against the manifest weight of the evidence. We find Richard's argument is without merit.

{¶16} When reviewing the sufficiency of the evidence underlying a criminal conviction, an appellate court examines the evidence in order to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Paul*, 12th Dist. Fayette No. CA2011-10-026, 2012-Ohio-3205, ¶ 9. Therefore, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

{¶17} A manifest weight of the evidence challenge, on the other hand, examines the "inclination of the greater amount of credible evidence, offered at a trial, to support one side of the issue rather than the other." *State v. Barnett*, 12th Dist. Butler No. CA2011-09-177, 2012-Ohio-2372, ¶ 14. To determine whether a conviction is against the manifest weight

- 4 -

of the evidence, the reviewing court must look at the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Graham*, 12th Dist. Warren No. CA2008-07-095, 2009-Ohio-2814, ¶ 66. "While appellate review includes the responsibility to consider the credibility of witnesses and weight given to the evidence, 'these issues are primarily matters for the [jury] to decide.'" *State v. Barnes*, 12th Dist. Brown No. CA2010-06-009, 2011-Ohio-5226, ¶ 81, quoting *State v. Walker*, 12th Dist. Butler No. CA2006-04-085, 2007-Ohio-911, ¶ 26.

{¶18} An appellate court, therefore, will overturn a conviction due to the manifest weight of the evidence only in extraordinary circumstances when the evidence presented at trial weighs heavily in favor of acquittal. *State v. Gerdes*, 12th Dist. Butler No. CA2018-03-056, 2019-Ohio-913, ¶ 11. Furthermore, "[a] determination that a conviction is supported by the manifest weight of the evidence will also be dispositive of the issue of sufficiency." *State v. Jones*, 12th Dist. Butler No. CA2012-03-049, 2013-Ohio-150, ¶ 19.

{¶19} Richard was convicted of domestic violence, a third-degree felony, because he had been convicted of two or more offenses of domestic violence prior to this incident. R.C. 2919.25(D)(4). Pursuant to R.C. 2919.25(A), "[n]o person shall knowingly cause or attempt to cause physical harm to a family or household member." Physical harm means "any injury, illness, or other physiological impairment regardless of its gravity or duration." R.C. 2901.01(A)(3).

{¶20} Following review, we find Richard's conviction for domestic violence is supported by sufficient evidence and is not against the manifest weight of the evidence. Contrary to Richard's argument, the state presented overwhelming evidence of Richard's

guilt.

{¶21} As indicated above, the state presented the testimony of Kratzer, who first discovered Johnna bleeding in a gutter. When Kratzer asked Johnna what had happened, Johnna informed him that she was going through a divorce and that her husband had stabbed her in the face. Johnna similarly told the responding EMTs that her husband had stabbed her in the face with a beer bottle. At the emergency room, Johnna informed her nurse that she had been struck in the face with a broken beer bottle and that she was not safe in her home. Johnna also provided both oral and written statements to law enforcement that her husband had slashed her in the face with a broken beer bottle. Though Johnna admitted to consuming alcohol that night, she was described as alert and oriented to her surroundings.

{¶22} At trial, Johnna recanted her testimony and testified that she "sustained injuries from falling on rocks." Richard maintains that Johnna's testimony at trial should be more credible than the multiple statements she gave on the night of the incident because she was under oath at trial. Richard further argues that Johnna was intoxicated, made the false statements as revenge for their impending divorce, and should not be considered reliable in any event because of her prior felony record. Richard also takes issue with the purported lack of evidence, including the failure of police to locate the bloody broken bottle and the lack of broken glass in Johnna's scalp.

{¶23} However, in addition to the evidence presented during its case-in-chief, the state presented rebuttal evidence from Johnna's probation officer. The probation officer testified that Johnna told her that she did not want to testify against Richard and that she planned to lie on the stand because she was terrified that Richard would kill her. Furthermore, Johnna's assertion on the stand that her injuries were caused by a fall on

rocks was inconsistent with the nature of her injuries. In her testimony, Johnna could not elaborate as to how her laceration could have been caused by a fall on rocks. To the contrary, the state presented testimony from the emergency room nurse, who testified that Johnna's injuries were consistent with laceration by a sharp object and that glass is not typically found inside a wound such as this.

{¶24} After a thorough review of the record, we find Richard's conviction was not against the manifest weight of the evidence. The state presented evidence that, if believed, established Richard caused his wife, Johnna, physical harm by slashing her with a broken glass bottle. Though Johnna recanted her story at trial, it is apparent that the jury found her testimony at trial to not be credible in light of her multiple, consistent representations on the night of the incident. It is well-established that "a conviction is not against the manifest weight of the evidence simply because the jury believed the prosecution testimony." *State v. Bates*, 12th Dist. Butler No. CA2009-06-174, 2010-Ohio-1723, ¶ 11. As the trier of fact in this case, the jury was in the best position to judge the credibility of witnesses and the weight to be given the evidence. *State v. Jones*, 12th Dist. Butler No. CA2015-02-020, 2015-Ohio-5029, ¶ 41. Here, we do not find that the trial court clearly lost its way and created a manifest miscarriage of justice when it found the state's evidence to be more credible than Richard's and convicted him of domestic violence. Finally, we note that the state presented evidence that Richard had two prior domestic violence convictions to sustain the instant conviction as a third-degree felony. R.C. 2919.25(D)(4).

{¶25} Because Richard's conviction for domestic violence is not against the manifest weight of the evidence, it is also supported by sufficient evidence. Therefore, Richard's first and second assignments of error are overruled.

{¶26} Assignment of Error No. 3:

{¶27} THE TRIAL COURT PLAINLY ERRED BY FAILING TO PROVIDE AN INSTRUCTION TO THE JURY THAT RICHARD JOHNSON'S PRIOR DOMESTIC VIOLENCE CONVICTIONS CANNOT BE USED TO INFER THAT HE HAS A PROPENSITY TO COMMIT CRIMES, IN VIOLATION OF THE DUE PROCESS CLAUSE OF THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND SECTIONS 1 & 16, ARTICLE I OF THE OHIO CONSTITUTION.

{¶28} In his third assignment of error, Richard argues the trial court erred in failing to sua sponte give the jury a limiting instruction regarding his prior domestic violence convictions.

{¶29} Because Richard's trial counsel did not request a limiting instruction and did not otherwise object to the trial court's jury instructions, our review of this issue is limited to a determination of whether the trial court committed plain error in failing to sua sponte give a limiting instruction regarding Richard's prior domestic violence convictions. *State v. Cox*, 12th Dist. Butler No. CA2005-12-513, 2006-Ohio-6075, ¶ 20; Crim.R. 30(A).

{¶30} Pursuant to Crim.R. 52(B), "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." Plain error does not exist unless, but for the error, the outcome of the trial would clearly have been different. *State v. Cunningham*, 12th Dist. Butler No. CA2017-03-034, 2018-Ohio-912, ¶ 15. Notice of plain error is to be taken with utmost caution, under exceptional circumstances, and only to prevent a manifest miscarriage of justice. *Cox* at ¶ 21.

{¶31} Following review of the record, we find no plain error in the trial court's failure to sua sponte give a limiting instruction regarding Richard's prior convictions for domestic violence. As stated above, Richard and his trial counsel stipulated to the prior convictions. The state's initial closing argument referenced Richard's prior convictions, but only for the

- 8 -

purpose of establishing the separate finding that he has been convicted two prior times, a third-degree felony. The state expressly stated that they "may not consider those prior convictions as a reason as to why, if he did it then, he must have done it now."

{¶32} Moreover, there was ample evidence that Richard committed domestic violence against Johnna on June 16, 2019. Though Johnna recanted at trial, the jury clearly found her testimony to be not credible. Johnna's testimony contradicted her prior statements to bystanders, first responders, emergency room personnel, and law enforcement that Richard had slashed her with the broken bottle. Johnna's testimony was further contradicted by the testimony of her probation officer, who testified that Johnna told her that she intended to lie on the stand. Accordingly, the trial court's failure to sua sponte provide a limiting instruction did not amount to plain error. Richard's third assignment of error is overruled.

{¶33} Assignment of Error No. 4:

{¶34} THE TRIAL COURT UNLAWFULLY ORDERED RICHARD JOHNSON TO SERVE CONSECUTIVE SENTENCES, IN VIOLATION OF HIS RIGHTS TO DUE PROCESS, GUARANTEED BY SECTION 10, ARTICLE I OF THE OHIO CONSTITUTION AND THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.

{¶35} In his fourth assignment of error, Richard alleges the trial court erred by ordering that his domestic violence conviction be served consecutive for his conviction for violating a protection order.[1] Richard's argument is without merit.

{¶36} This court reviews felony sentences pursuant to the standard of review set

---

1. As previously noted, Richard pled guilty to one count of violating a protection order while awaiting sentencing for his domestic violence conviction.

forth in R.C. 2953.08(G)(2) to determine whether the imposition of those sentences is clearly and convincingly contrary to law. *State v. Julious*, 12th Dist. Butler No. CA2015-12-224, 2016-Ohio-4822, ¶ 8. Pursuant to that statute, an appellate court may modify or vacate a sentence only if, by clear and convincing evidence, "'the record does not support the trial court's findings under relevant statutes or that the sentence is otherwise contrary to law.'" *State v. Harp*, 12th Dist. Clermont No. CA2015-12-096, 2016-Ohio-4921, ¶ 7, quoting *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, ¶ 1.

{¶37} Pursuant to R.C. 2929.14(C)(4), a trial court must engage in a three-step analysis and make certain findings before imposing consecutive sentences. *State v. Dillon*, 12th Dist. Madison No. CA2012-06-012, 2013-Ohio-335, ¶ 9. First, the trial court must find that the consecutive sentence is necessary to protect the public from future crime or to punish the offender. *Id.* Second, the trial court must find that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public. *Id.* Third, the trial court must find that one of the following applies:

> (a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.
>
> (b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.
>
> (c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

R.C. 2929.14(C)(4)(a)-(c).

{¶38} "A trial court satisfies the statutory requirement of making the required findings when the record reflects that the court engaged in the required analysis and selected the appropriate statutory criteria." *State v. Setty*, 12th Dist. Clermont Nos. CA2013-06-049 and CA2013-06-050, 2014-Ohio-2340, ¶ 113. In imposing consecutive sentences, the trial court is not required to provide a word-for-word recitation of the language of the statute or articulate reasons supporting its findings. *Id.* Nevertheless, the record must reflect that the trial court engaged in the required sentencing analysis and made the requisite findings. *Id.* The court's findings must thereafter be incorporated into its sentencing entry. *State v. Ahlers*, 12th Dist. Butler No. CA2015-06-100, 2016-Ohio-2890, ¶ 10.

{¶39} On appeal, Richard argues the trial court's findings under R.C. 2929.14(C) are not supported by the record. In so doing, Richard argues that a polygraph test he took after the jury verdict "exonerated him." Furthermore, Richard argues that the violation of the protection order was not serious because he did not harm or intend to harm Johnna in violating the order. Richard maintains that he tried to contact Johnna merely to obtain property from her following their divorce.

{¶40} We find the trial court did not err in its sentencing decision, as Richard's sentence was not contrary to law and was supported by the record. In the present case, the trial court stated that it had considered the purposes and principles of sentencing, as well as the seriousness and recidivism factors contained in R.C. 2929.11 and 2929.12. The record likewise reflects that the trial court made the findings required by R.C. 2929.14(C)(4) when it ordered the sentences be served consecutively. The trial court found that consecutive sentences are necessary to protect the public and punish the defendant. The trial court found that consecutive sentences are not disproportionate to Richard's conduct and to the danger he poses to the public. The trial court also found that at least

two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct. Finally, the court found Richard's history of criminal conduct, particularly his pattern of committing domestic violence against Johnna, demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender. The trial court later memorialized these findings within its sentencing entry.

{¶41} That Richard still pleads his innocence in the face of a jury verdict and overwhelming evidence during his trial is not reflective of any remorse or willingness to take accountability for his actions. The same is true when Richard characterizes his violation of a protection order as less than serious. From the trial court's statements at the sentencing hearing and the language used in the sentencing entry, it is clear that the trial court complied with the dictates of R.C. 2929.14(C)(4). *See State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, ¶ 37; *State v. Sess*, 12th Dist. Butler No. CA2015-06-117, 2016-Ohio-5560, ¶ 35-38. As a result, we find the trial court did not err in its sentencing decision. Richard's fourth assignment of error is overruled.

{¶42} Judgment affirmed

HENDRICKSON, P.J., and S. POWELL, J., concur.